Good morning. May it please the court, my name is Leonard Feldman. I'm counsel for the plaintiff and the appellant, United National Maintenance. In the previous appeal in this matter, the court agreed with the district court that there was instructional error regarding United's interference with contract claim. So it remanded the matter to the district court for a specific purpose, which was to craft an appropriate jury instruction interpreting the terms of United's contracts. And the court explained that in order for the jury to understand whether United's performance was disrupted, it needed to know what contractual rights United possessed. So that was the pivotal issue on remand. What contractual rights did United possess under its contracts with GS and Champion? And the problem here is that the district court on remand misinterpreted those contracts. According to the district court, United's contractual rights were subject to whatever policies, rules, and regulations SDC imposed on trade show associations. But the problem with that is there isn't a single word in the contracts that United executed with GS and Champion that would support that view. And with all due respect to the district court, this is not a particularly complex issue. If you want to know whether United agreed to be subject to SDC's policies, rules, and regulations, the simplest and easiest and correct thing to do is to look at United's contracts and determine whether there's a provision in those contracts that says United shall be subject to SDC's rules, regulations, and policies. But there isn't any such language there. Counsel, let me ask you just to help me understand the contractual structure here. I live in San Diego, so I'm familiar with the convention center. And at the convention center, if they institute a policy saying that anyone who works in the convention center, whether directly for the convention center corporation or for one of the vendors, must have a college degree. And it seems like a silly rule, but let's say they pass that. That was a new rule that they passed there. That would presumably increase the costs of companies that were having people clean the convention center. Under your view of the case, would that be potential torturous interference with the contract? It would, unless you have entities that have agreed to comply with SDC's rules and regulations. But that doesn't mean that SDC's automatically subject to liability. Because the test for interference with contract claim is very demanding and it's multifaceted. And it requires that SDC know about those contracts that it interfered with, that it acted intentionally to interfere with those contracts, and that it acted without any justification. And that last prong is particularly significant in this case, because our case is unusual in the sense that when SDC implemented its exclusivity policy, it knew about United's contracts with GES and Champion. It intended to interfere with those. It argued to the jury that its exclusivity policy was motivated by security concerns and quality concerns. And the jury rejected that in a unanimous verdict. And while SDC has its argument, which you're all familiar with from the briefing, that it had a contractual right or privilege to interfere, it hasn't said one word to this court, nor did it say it in the previous appeal, challenging the jury's verdict on sufficiency of evidence grounds. So we have a jury that has unanimously concluded that the policy they implemented wasn't for security, wasn't for quality, it was a money grab. And so to your question- So what's wrong with a money grab? I mean, they didn't sign the contract with your client. Why aren't they entitled to act in their own economic best interests? They're certainly entitled to do that, but it can, and in this case does, give rise to liability. Why? Because- They didn't agree to let your client be employed. I mean, they didn't sign that contract. Why aren't they allowed to say, look, we're operating in our own best interests and we think it's gonna work out better for the convention center. We have our people there, we'll have better relations with our union, whatever else. I'm not sure what you described as a money grab isn't what they're entitled to do in their own self-interest. If they have a justification for interference- We'll make more money, money grab. I'll accept your characterization. What's wrong with that? If a money grab satisfies the justification prong, then the interference with contract claim would no longer be a claim. It would simply be a nullity in California law. And of course, this issue was litigated and we have a jury verdict that found that there was no justification. So if we were to assume that a money grab is a justification, the jury rejected that too. What other justification would there be? I don't know, other than a money grab. But I think that's the problem here. I mean, I think that the convention center is trying to make money, trying to pay its bills, and if it can find ways to make more money, that does not directly violate other federal law. It's just saying, look, we can maximize revenue, but I do it this way. I'm having trouble seeing, I understand from a jury's perspective, it sounds yucky. These big, rich guys are hurting the little people cleaning, I get that. But from a legal perspective, I echo Judge Clifton's question. Well, there's an assumption built into your question, which I think is very important. And you said, as long as it doesn't violate a federal statute. So if the rule was, you know, Muslims can't perform cleaning services, I think we'd all agree that would be unlawful. California has implemented its own laws. It's not just a question of federal law. But, I mean, everything's about, I mean, half of our cases are money grab. I mean, we would have, our docket would be cut 60% if we weren't here on money grab cases. Not a bad thing, actually. So I guess, is there something else besides, if they have the motive to make money, and I'll put the screws to them, and they'll probably admit, yes, the reason was to make more money. Can you give us a case that says that that is improper? Other than, we're familiar with PG&E. Or, I'm sorry, S, is it? SDC. S, thank you. We're familiar with that one. Any other cases? California courts haven't addressed whether a money grab is a sufficient reason or not. Logically, it can't be. Because all torts, whether it's an antitrust violation, all economic business torts, they are motivated by financial considerations. The question is, in this case, is whether SDC had a contractual right to be able to do that. And what California has said, and it's no different. It's not a party to the contract with your client. And that's very significant. So it hasn't agreed to anything with your client. I mean, part of the problem here is the merger of contract law and tort law. We're using different concepts in essentially the same context. But this starts as a contract action. Yeah, let me follow up on that. Because I'm trying to find the contract that is being affected by what the SCC's policy is. The SCC says to the service providers, like GES, you have to either do the cleaning, if I understand the new policy. You have two options. You can do the cleaning, and then you have to use our employees to actually do the work. But you manage the contracts and do all of that, and we'll give you a cut. Or you can turn the whole cleaning operation back over to us, right? Right. So your client, UNM, has a contract with GES. Correct. Under which GES says, if we're going to do the cleaning under normal circumstances, we promise that we'll hire you to handle the cleaning services. Right. Is that right? That's correct. The policy doesn't affect the contract between you and GES. Yeah, so that's where I- Let me finish. I'm sorry. Because your contract with GES, as I read it, doesn't specify who does the work, who the employees of UNM will be, and how much you're going to pay. That's left open to the particular clients at that particular time. Isn't that a correct reading of your contract with GES? Yes, and that's why we have not- So that this new policy really is a regulatory impact on your business, but I can't, which may or may not be correct, may or may not be a legitimate regulatory action by the management, which happens to be a government, but I don't find what contract is being directly impinged by that policy change. I recognize that it makes your situation a little dicey because GES may say, well, let SCC do the work. We're not going to hire you anymore, but there's nothing that requires that you be hired. So what California courts have said, and they've said this repeatedly and they've said it very clearly, is that there's two ways to interfere with a contract. One is to prevent performance, and the other is to make performance more expensive or difficult. And so you're right. The contract doesn't indicate who would actually be employed doing the cleaning services. United has its own employees and it pays them about $10 an hour. All of a sudden, SDC comes in and those prices skyrocket. That's the interference claim. And so- Well, it interferes with your ability to carry out your contract with GES. Correct, and that- If GES wants to continue to hire you under those circumstances, but there's no obligation on either of your parts. Well, there is an obligation on GES's part as well as Champion's part to hire United unless the trade association has a relationship with another cleaning company. So GES and Champion continued to hire United and United, of course, was contractually obligated to continue to do the work. But the California courts have made a policy determination that when somebody jumps in and makes performance more expensive, that's actionable unless they can show that there's a justification. And that's the protection. And this isn't a governmental regulation. If it was, we'd be talking about it in different terms. It is a policy that was implemented that is implemented pursuant to a contract between SDC and the trade show associations. And it interfered with a contract between United and GES and Champion. And that is the paradigm of a interference with contract claim under California law. There are a number of additional issues in this case, including the renewal contracts, but I prefer to reserve my time at this point. Very well. Thank you. Thank you, counsel. Good morning. May it please the court. My name is Joe Ergastolo. I am the attorney for the San Diego Convention Center Corporation, the EPOLE. I'd like to address primarily one issue today, and that's whether the district court properly granted summary judgment to SDC after constructing the contracts between UNM on the one hand and the decorators, GES and Champion, on the other hand. After the July 2011 jury trial, it's been a while, the district court granted SDC's motion for a new trial, reasoning that it had committed prejudicial error. By failing to instruct the jury as to UNM's rights under those contracts with GES and Champion, in light of the extrinsic evidence. This court affirmed, and it mandated that the district court engage in the contract construction. And the language from this court's opinion states, for the jury to understand whether UNM's performance was disrupted required the district court to determine what contractual rights UNM possessed. This thus required a legal interpretation of the contract, and the trial court correctly concluded that it erred in this case by not doing so. The question, the real question here is, can UNM's rights be determined by the four corners of the contracts between UNM on the one hand and the decorators on the other? The answer to that is no, they cannot. Those contracts don't mention SDC. And more importantly, those contracts don't mention the source of the right for UNM to use its own employees in SDC's building. Simple analogy, I enter into a contract with Judge Owens to clean this glorious building. There's a dispute. The contract doesn't state whether Judge Owen has the right to give me the cleaning work. We have to look outside the four corners of that contract between me and Judge Owen to determine whether or not Judge Owen has the right to contract with me. But that's not an issue in this case, is it? Well, it is, the analogy, well, Judge Owens. I don't have the authority. You do not have the authority. Well, let's take the analogy back to the facts here. There's no doubt that the decorators had contractual power to enter into a contract with UNM, is there? There is no doubt that they had the right to enter into a contract. So your analogy doesn't help us any? It does, it does, and let me explain how. Your Honor, my analogy with Judge Owen presumes that Judge Owen had the right to contract for the cleaning services. It's the same presumption here. We have to go way up the chain of contracting to get to the original license agreement, and that's the license between SDC and the events themselves. An example, Comic-Con. Those licenses are entered into years way in advance of the events. The bigger the event, the further in advance those licenses are entered into. Those licenses agreements specifically provide that the licensee, in our example now Comic-Con, is bound by the PRRs, the procedures, rules, and regulations of the Convention Center. And when this new policy went into effect in 2007, were there any license agreements already in place, and were there any contracts in place between the decorators and UNM? Yeah, there were. So they were all valid and not affected because you couldn't make this policy retroactive to prior contracts, could you? We could not, yes we could actually, because our license agreement specifically gave us the right to change the PRRs from the date that the contract was entered into to the date of the event. And that's what happened here. We changed the rules. Effective 2007, we changed the PRRs prohibiting any cleaning contractor, not just UNM, from having its own employees do work in the building. The licensees agreed, when they entered into this contract, they agreed that they would abide by future changes to the PRRs, and that's what we did. Now the licensees, then, to go back to the contract structure here, which it's a trial exhibit 872, it's in the record at page 216, there's a little structure. From the top of that structure, the license that we talked about, Comic-Con doesn't actually put on the show itself. After the licenses are entered into, contracts with the decorators, general contractors, who actually physically build things in the convention center at a very quick pace. They build the show in two days and take it down in two days. Those contracts are not in the record. But whatever rights SDC grants to the licensees, those licensees can't grant greater rights, as a matter of law, cannot grant greater rights. As of 2007, a bunch of those rights had been granted within the then existing rules, correct? They had been, well, the rights had been granted. As you can tell, I'm having trouble distinguishing. I mean, I would distinguish between your power to change the rules once in 2011, these contracts that UNM, I'm telling you what's troubling me, in 2011, when UNM is renegotiating contracts with the decorators, or whatever you want to call them, no question that SCC has the power to implement its policy. I'm a little concerned about these prior contracts that are already in place. And as you say, as of 2007, a lot of those performance requirements were already locked into agreements between the decorators and the show people, and SCC, and UNM. You are correct that they are locked in, but what SDC did is it had the right to change those contracts under its licenses on a going forward basis. That's exactly what it did here. There's a significant period of time here. The marketplace changes. Someone's gonna have the burden of the change of that marketplace. It's either going to be SDC, if it didn't reserve to itself a right to change, or it's gonna be somebody else, the licensee or downstream, the decorators. There's nothing in this case, nothing in the law that prohibited 2007 SDC saying, I'm going to shift the burden of the changes in the marketplace to someone downstream, to the people that use the facility. That's not illegal. And it doesn't violate any contract. So as of 2007, USD had the absolute right to say, I'm shifting the burden here to the licensees to themselves figure out how to deal with the changes that we're going to give them later. And that's what they did. Where I'm headed with this argument, Your Honor, is what rights, how do you define the rights in the contract between UNM and the decorators? They don't exist in thin air. UNM can't have, and the decorators don't have a right, if it doesn't come from somewhere else in this building. Those rights are limited to coming down the stream from the public entity, SDC, through the licensee to the general contractors, and then to the sub-licensees. In your position, they can change it anytime they want. They can change if the contract permits them to change it. Of course. Regardless of what other contractual commitments have been made. If those contractual commitments are subject to those rights for this building, because it's SDC that controls its house, it's SDC that has the right to say who's going to work in the building and under what circumstances. So yes, here SDC reserved to itself the right to make that change, even retroactively, for contracts that were entered into prior to 2007. It gave notice of the change through the PRRs, and it was up to the licensees and then the downstream sub-licensees to deal with those changes. Do you agree that the policy change had the effect of increasing United's costs? The policy change increased United's costs, but the question is, did it disrupt the contract rights? Well, as I go through the elements of the California Cause of Action for Intentional Interference with Contractual Rights, it looks like they check off most of the boxes until you get potentially to justification. And we have here a jury verdict that finds no justification. What are we supposed to make of that part of the verdict? Well, I want to discuss the justification issues. They're not before the court here. The only issue before the court here is the summary judgment issue of whether or not there was a disruption or a determination of UNM's rights. And the jury verdict at this point is irrelevant. It's been reversed by the PRRs. Well, if increasing costs is a disruption, isn't that a problem for you? Well, what we have, what we're trying to do here is not, here's what the Ninth Circuit stated, previously held that if UNM's rights are conditioned on the usage policies of SDC, then SDC's change determined rather than disrupted UNM's performance. That's at the first UNM case at page 1009. And because of the fact that the licenses take away the right for UNM to use its own employees in the convention center effective July 1, 2007, that change determined UNM's rights. It didn't disrupt it. You can't look at the four corners of the UNM contracts with the decorators to determine those rights. They have to come from somewhere. They're limited. At US, undisputedly, SDC had the right to make that change. It made that change. And on a going forward basis, it shifted the burden to the licensees to deal with it. Now, there was a point- If the contract had said, we're taking, rather, if the policy had said, we're taking all this in-house, we're going to do all the cleaning with our own employees, we're taking control, there's simply nothing left for the decorators to contract for with regard to cleaning services, that'd be one thing. What we have here is something that said, we're taking the staffing in-house, you've got to use people that we have hired, and this is what it's going to cost you. So, United could continue- I mean, the decorators still had cleaning services they needed, and United could continue to form under that contract. They just had to do so at a much higher cost, at $17 an hour, having the effect of increasing their costs. And under California law, that seems to be disruption. So, I accept your premise that you have to look to the contract to figure out what it was that happened, but what happened wasn't that there was no cleaning service to be performed, or that United couldn't perform the cleaning service, it just had to do it at a much higher cost. But I still want you to get to the justification point, because in the end, it seems to me that would be an easy answer to this case, except that the jury said no to that question. The jury verdict was set aside, and there is no jury verdict in this universe that we are today. If this case gets retried, we're purely speculating as to what justification defense the convention center is going to put forward, if at all. Clearly, this is after 9-11, there were a host of reasons, just, I'm stepping outside the record here, because the justification issue. It's a long time after 9-11, so I'm not. It took a long time for a public entity to make some decisions on what to do with a very valuable, significant asset on the waterfront, in a very difficult place on the waterfront. So, there was a whole analysis that went into this, what the justifications were, that aren't before the court. Whatever they were, they didn't persuade the jury that heard this case the first time. They did not persuade that jury, whose verdict was set aside. Well, I mean, yeah, but the instructional error didn't speak to that issue, as best I can see. I didn't see anything in the objections, or in the first decision from this court, that spoke to justification. There is, you are correct, your honor, the issue before the court is whether or not SDC's contract rights determined, as opposed to disrupted, UNM's contract rights. That's really the only issue here. And if those contract rights take precedent over UNM's contracts, then it determined them, not disrupted them. And one last point I want to make here, is there was some discussion with my opposing counsel regarding the contracts themselves between GES and Champion on one side and UNM. They have best efforts clauses in them. One of them actually used the words best efforts, another one has a very similar language. I question whether or not there wasn't an out in those contracts by either GES or UNM. If there's a license above them that says, I can't use you anymore, UNM employees, do we truly have a threat of a breach at that contract level? Those best efforts clauses are enforceable under California law. So again, if you go even stay within the four corners of the contract, there's really an issue as to whether or not there was any entitlement by UNM on the one side or GES and Champion on the other to actually go through with those contracts at a significant more expense. UNM chose to preserve its business model and go forward and file a lawsuit to try and enforce that business model. And we've been at it for 10 years. Just to wrap up, Your Honor, I see my time is very short. We'd request that the summary judgment entered by the district court judge be affirmed. Thank you. Thank you, counsel. Thank you. As my opposing counsel mentioned, what this court said in its previous decision is if UNM's contractual rights were conditioned on the usage policies of SDC, that was the first half of the sentence that he overlooked. And it's the critical part of the sentence because that's the dispositive issue under the district court's analysis. Were United's contractual rights conditioned on the usage policies of SDC? And the way to answer that is to look at the contract. And this isn't a multi-tiered contract. Which contract? Look at United's contracts with GES and Champion. And if you look at the Ninth Circuit's previous decision, it's crystal clear in that regard. The section at issue, section four, begins with during trial the district court rejected SDC's request for a legal interpretation of potential conditions precedent in United's contracts with the decorators. That entire section of this court's opinion is about United's contracts with the decorators. And if you look at the Trottier case, that's a construction project. And it shows a very different contractual chain where you have subcontractors in a construction project that are agreeing to be bound by the prime contract. United never agreed to be bound by SDC's license agreements with trade associations. I'm not sure how that's SDC's problem. Suppose SDC said, look, we're doing all this in-house so the decorators don't have cleaning services they need anymore. Couldn't they do that? I don't think they could. They didn't do it. But I also think it's important for your honor to recognize the reason they didn't do it is because in the first chapter of this case, we were litigating the antitrust issues. And it was a significant point for SDC to be able to say in response to the essential facilities doctrine claim that we didn't take it in-house. We still let you do the cleaning services. You just have to use our employees. The other thing that's important there is that if SDC brought it in-house, their costs would increase. SDC wants to remain competitive with Anaheim and Las Vegas. It made a decision, and it had good reasons to make a decision not to bring it in-house. But I would submit- My question is a somewhat broader one, not as to whether that would have been a good idea. But it seems to me on some level, the notion that United didn't agree to be governed by whatever SDC decided can't be right. Because SDC hasn't agreed to subordinate its rights as owner to some agreement the decorator entered into with United. Suppose I hire a yard service for my house, and they come, and the yard service guy hires somebody to work for him, and I know I'm taking you over time. How is it that whatever the yard service guy does with his employee can somehow affect what I can do with my house? So I don't like the yard service anymore, and I don't have a contract with the yard service that gives them rights to continue for the next six months. I say, get out of here. And you're gonna tell me that the person that the yard service contracted with has got rights against me? I just don't follow that. The analogy isn't quite on point. I'm not surprised. So look at it this way. There's a landlord. The landlord leases you the space, and you live in that space. And you hire a cleaning company, and that cleaning company subcontracts out with a gentleman who's gonna provide the yard service. And the landlord comes in and says, you know what, I now sell gasoline. And so you, and directs this policy to your yard service, and says, anybody who's mowing the grass now has to buy my gasoline for $80 a gallon. That's the analogy. It's not about your right. Okay, let's make that it. Why am I, as the owner, required to subordinate my rights to an agreement made by, in this case, the decorator, in my case, the yard service? Well, in the analogy, the owner had a contract with the landlord. So the trade associations did agree, and there's no doubt about that. They did agree to comply with the policies, rules, and regulations. But United did not. So United stands in a better position than the party that actually has a contract with SDC. Correct. How can that be? Because California has made a determination that the protection that we give in that circumstance comes from the various elements of the tort, including justification. And if they could have shown justification, which, as you pointed out, they didn't, and the jury rejected their argument, this would be a much different case. Thank you very much, counsel, for your argument today. Thank you, Your Honors. This matter is submitted, and we'll proceed to the next case.
judges: Clifton, Owens, Plager